THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| INSTASOL, LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>EM DIGITAL LIMITED, a foreign entity, and GURGUE ELMO LAKSHMAN PERERA, a foreign individual,<br><br>    Defendants. | CASE NO. C18-0391-JCC<br><br>ORDER |

This matter comes before the Court on Defendant's motion to dismiss (Dkt. No. 12). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion for the reasons explained herein.

## I. BACKGROUND

This breach of contract suit arises out of the parties' dispute over a $400,000 payment Plaintiff made to Defendant company EM Digital Limited ("EM Digital") in February 2014. (Dkt. Nos. 12 at 7, 17 at 2.) Plaintiff characterizes the payment as a loan, whereas Defendants claim it was an investment. (*Id*.) However, the nature of the payment is irrelevant to the dispute at hand—whether or not the matter is properly before this Court.

Defendant EM Digital is a defense engineering firm incorporated in England, with offices in England, Malaysia, and Sri Lanka. (Dkt. No. 12 at 3.) Defendant Gurgue Elmo Lakshman

Perera ("Perera") is the Chief Executive Officer and Chief Technology Officer of Defendant EM Digital. (Dkt. No. 13 at 2.) Plaintiff InstaSol is a limited liability company incorporated in Delaware with its principle place of business in Washington. (Dkt. No. 17 at 3.) Instasol has two members, Sumeet Suri, a Washington resident, and Jagrut Patel, a Florida resident. (Dkt. No. 17 at 3.) The payment at issue was related to EM Digital's efforts to procure a bond in order to bid on a contract with the Indian Navy. (Dkt. Nos. 12 at 5–7; 19 at 8; 19-6; 19-7.) While the parties diverge on the exact relationship between the payment and the bid, it appears that Suri and Patel partnered with EM Digital on the bid effort. (*Id*.) Perera asserts they did so as Tonbo Imaging, an Indian Company Patel and Suri also co-owned. (Dkt. No. 12 at 5, 7.) Plaintiff presents a number of emails between Patel, Suri, and Perera discussing Defendants' repayment of the funds at issue. (Dkt. Nos. 19-15–19-21.)

Defendants move to dismiss Plaintiff's complaint on three grounds: improper service of process, the Court's lack of personal jurisdiction over Defendants, and *forum non conveniens*. (Dkt. No. 12 at 2.) Because the Court concludes that it does not have personal jurisdiction in this matter, it need not address Defendants' alternative grounds for dismissal.

## II. DISCUSSION

### A. Legal Standard

To establish personal jurisdiction, the requirements of both the state's long-arm statute and federal due process must be satisfied. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Because Washington's long-arm statute, Wash. Rev. Code § 4.28.185, extends to the limits of federal due process, the only issue is whether federal due process requirements are met. *Shute v. Carnival Cruise Lines*, 783 P.2d 78, 82 (Wash. 1989). For the Court to exercise personal jurisdiction over a nonresident defendant, due process requires that the defendant must have at least "minimum contacts" with Washington such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (internal quotation marks and citation omitted).

Minimum contacts can be established through the application of either general or specific jurisdiction. *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996). Plaintiff does not contend that Defendants are subject to general jurisdiction in Washington, but argues that specific jurisdiction exists. (Dkt. No. 17 at 13.)

Plaintiff bears the burden of making a prima facie showing of jurisdictional facts. *Schwarzenegger*, 374 F.3d at 800. The Court must take as true Plaintiff's uncontroverted allegations, and resolve conflicting statements in affidavits in Plaintiff's favor. *Id*.

### B. Analysis: Specific Jurisdiction

The Court can exercise specific jurisdiction over a nonresident defendant for conduct that "create[s] a substantial connection" with Washington. *Walden v. Fiore*, 571 U.S. 277, 283 (2014). For claims sounding in contract, the Court applies a three-part test: (1) "whether a defendant has purposefully availed himself [or herself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," (2) whether Plaintiff's claim arises out of or relates to Defendants' Washington-related activities, and (3) whether the exercise of jurisdiction is reasonable. *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015) (internal citation and quotation omitted). Plaintiffs must establish the first two elements. *Id*. If established, Defendant must show why the exercise of jurisdiction would not be reasonable. *Id*.

#### 1. Purposeful Availment

The basis of Plaintiff's purposeful availment argument is the loan agreement between the parties. However, "a contract alone does not automatically establish minimum contacts in the plaintiff's home forum." *Id*. (citing *Boschetto v. Hansing*, 539 F.3d 1101, 1017 (9th Cir. 2008). Nor is the fact that Plaintiff Instasol is a resident of Washington sufficient to confer personal jurisdiction on this Court. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) (the existence of a contract with a resident of a forum state does not alone create personal jurisdiction over a nonresident contracting party). Purposeful availment requires affirmative actions "by the

Defendant *himself*" that "create a substantial connection" with the state of Washington. *Id.* at 475; *Roth v. Garcia Marquez*, 942 F.2d 617, 621 (9th Cir. 1991). In a contract dispute, relevant actions include "prior negotiations and contemplated future consequences" from contractual dealings, "along with the terms of the contract and the parties' actual course of dealing." *Burger King Corp.*, 471 U.S. at 479. Effects of out-of-state conduct in the forum state are not relevant to the minimum contacts analysis in contract-based actions. *Core-Vent Corp v. Nobel Industries AB*, 11 F.3d 1482, 1486 (1993).

The evidence before the Court indicates that the disputed contract, or at least the parties' relationship for the bid, was negotiated in person in England and India, and over the phone and email. (Dkt. No. 13 at 4, 5.) There is no indication that Perera ever visited the United States or that EM Digital transacted business here. Plaintiff urges the Court to count numerous phone calls, emails, and other electronic communications between Perera in England and Suri in Washington as relevant contacts. (Dkt. No. 17 at 15.) But in an age of on-the-go communication, the Court cannot find such communications to be purposeful activity directed at Washington. *See Roth*, 942 F.2d at 622.

On the other hand, the terms of the disputed contract weigh in Plaintiff's favor. The agreement is governed by Washington law. (Dkt. No. 19-2 at 4.) While this choice of law provision is not determinative, it is relevant to the Court's analysis. *See Smartstop Self Storage Operating P'ship v. CanDev, ULC*, No. SACV 15-1415-CJC(DFMx), slip op. at 3 (C.D. Cal. Oct. 26, 2015). Plaintiff further asserts that the contract requires payment to be made in Washington. (Dkt. No. 17 at 16.) It relies on the title paragraph of the purported loan agreement, which states the names and addresses of the borrower and lender and the amount of the loan. (Dkt. No. 19-2 at 2.) The indicated language does not clearly require payment of the loan to take place in Washington. (Dkt. No. 19 at 10.) However, Suri's declaration indicates he expected repayment through a wire transfer to Instasol in Washington. (Dkt. No. 19 at 11.)

Still, this case is distinguishable from *Freestone Capital Partners, L.P. v. MKA Real Estate Opportunity Fund I, LLC ("Freestone")*, on which Plaintiff relies. (*See* Dkt. No. 17 at 15) (citing 230 P.3d 625 (Wash. Ct. App. 2010)). *Freestone* involved a number of loans totaling $30 million in value and jurisdiction over the out-of-state guarantors of those loans who visited Washington and were the beneficiaries of those loans. 230 P.3d at 654–56. In contrast, Perera never visited Washington, the agreement involved a one-time transaction, and the loan appeared to benefit both parties as partners on the Indian tender. Thus, the terms of the contract do not decisively favor an exercise of personal jurisdiction.

Finally, the parties' course of dealing and contemplated future consequences add little to indicate a "substantial connection" with Washington or affirmative actions invoking the protections of Washington laws. Emails between Perera, Patel, and Suri indicate that Perera requested the disputed funds from Patel and Suri and that delivery of the funds from Instasol was prompted by Suri and Patel. (Dkt. No. 19-7 at 2.) Perera e-signed the agreement in London, and emailed the document to Patel in Washington.[1] (Dkt. No. 19 at 3.) Although Patel transferred the money from Washington via wire, it was sent to an account at the State Bank of India located in London, England. (Dkt. No. 13 at 7, 19 at 8.) Further, there is no indication that the parties anticipated a long-term engagement between EM Digital and Instasol. Plaintiff's proffered evidence instead suggests that this payment was intended to be a short term transfer of assets to support Perera, Patel, and Suri's long-term business relationship abroad.

Although a close call, the Court does not find sufficient purposeful availment to compel an exercise of personal jurisdiction on this prong.

//

//

---

[1] Perera's assertion that he did not know he was dealing with Instasol until he received the loan documents is not credible in light of emails before the Court between Perera, Suri, and Patel, with Instasol listed in Suri and Patel's signature blocks. (*See, e.g.*, Dkt. No. 19-5 at 2) (email dated November 18, 2013).

2. Arising out of Forum-Related Activities

Defendants argue this action arises not out of the loan agreement, but out of nonpayment, and relates only to Defendants' actions in England. (Dkt. No. 20 at 8.) This is a distinction without a difference. To have a dispute over non-payment, there must also be a dispute about the obligation to pay, i.e., over the loan agreement. Plaintiff's claims clearly arise out Defendants' forum-related activities: their contract with Instasol.

3. Reasonableness

To determine reasonableness, the Court weighs the following non-dispositive factors: "(1) the extent of the defendant's purposeful injection into the forum; (2) the defendant's burdens from litigating in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Core-Vent Corp.*, 11 F.3d at 1488. Weighing Defendants' showing on these factors, the Court finds that it would be unreasonable to exercise jurisdiction, even if Plaintiff had established minimum contacts.

### a. *Purposeful Injection*

This factor "parallels the question of minimum contacts." *Amoco Egypt Oil Co. v. Leonis Nav. Co., Inc.*, 1 F.3d 848, 852 (9th Cir. 1993). The Court has concluded that Defendants' purposeful injection into the forum state was minimal. *Supra* Section. B.1. This factor weighs against personal jurisdiction.

### b. *Burdens of Litigating*

The Court is to examine the burden on Defendants "in light of the corresponding burden" on Plaintiffs, in the context of "modern transportation and communications." *Brand v. Menlove Dodge*, 796 F.2d 1070, 1075 (9th Cir. 1986). In light of the international nature of this matter, one party will obviously have to bear the inconvenience of travel. But the Court concludes that the burden on Defendants to travel to Washington is greater than the burden Plaintiff would incur

by having to travel to England to litigate this matter. While Perera has never traveled to the United States, it appears from the record that Instasol representatives Patel and Suri traveled with some frequency and ease to England and routinely transact business in that forum. (*See* Dkt. No. 19 at 10) (Patel offered to meet Perera in England to resolve payment of the alleged loans). Plaintiff argues that it will be burdened by having to start a new suit in a foreign country and locate foreign counsel. (Dkt. No. 17 at 21.) The Court gives little weight to this fact, as such a situation is common when a suit against a foreign defendant is dismissed for lack of personal jurisdiction. Furthermore, Plaintiff's prior business dealings in England should minimize this burden. This factor weighs slightly against personal jurisdiction.

### *c. Conflict with Foreign Sovereignty*

Courts should be cautious in extending personal jurisdiction over foreign corporations. *See Asahi Metal Industries v. Superior Court of Solano Cty.*, 480 U.S. 102, 107 (1987). Since EM Digital is incorporated and registered in England and Perera is a Sri Lankan or English citizen and resident, this Court's exercise of jurisdiction would necessarily conflict with those countries' sovereignty. Furthermore, Plaintiff indicates that they have engaged a company to search land records for real property belonging to Perera in the United Kingdom ("UK"). (Dkt. No. 19 at 12.) The potential that such assets could become involved in this suit increase this potential conflict. This factor weighs against personal jurisdiction.

### *d. Washington's Interest in Adjudicating Suit*

Washington has an interest in ensuring that agreements negotiated by foreign businesses with Washington citizens are properly enforced. This factor favors personal jurisdiction.

### *e. Efficient Judicial Resolution*

Normally, the most efficient forum is the site where the evidence is located. *Pac. Atl. Trading Co. v. M/V Main Exp.*, 758 F.2d 1325, 1331 (9th Cir. 1985). Much of the evidence (emails, WhatsApp messages) is available electronically, but both parties assert that they have originals of additional relevant documents in their respective offices. (Dkt. No. 19 at 11.) Still,

third-party documents and witnesses located in London—including State Bank of India documents and witnesses such as Paul Cooper, CFO of EM Digital—will likely be relevant in this dispute. (*See* Dkt. No. 19 at 10). This factor slightly disfavors personal jurisdiction.

### f. *Convenience and Effectiveness of Relief for Plaintiff*

Defendants assert that Instasol's high-level employees Patel and Suri regularly conduct business in the UK and India, significantly decreasing their burden of litigating abroad. (Dkt. No. 12 at 19.) It is always more convenient for a plaintiff to litigate in her home state. However, Patel and Suri have demonstrated an ability to meet and work in England. Thus, while this factor favors personal jurisdiction, it does so only slightly. *See Roth*, 942 F.2d at 624.

### g. *Existence of Alternative Forum*

Plaintiffs "bear[] the burden of proving the unavailability of an alternative forum." *Core-Vent Corp.*, 11 F.3d at 1490. An alternative forum for this action is England, where Perera and EM Digital reside and conduct business. (Dkt. No. 12 at 19.) Plaintiff does not specifically address the suitability of England as an alternative forum. (Dkt. No. 17 at 20–22.) It simply asserts that Washington is the most convenient forum, that litigating elsewhere would be burdensome, and that "there is no evidence another forum would be as effective." (*Id*.) Therefore, Plaintiff has not met its burden. This factor weights against personal jurisdiction.

The balance of the above factors indicates that this Court's exercise of personal jurisdiction would be unreasonable. The Court concludes it does not have personal jurisdiction over Defendants in this matter.

## III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. No. 12) is GRANTED.

//

//

//

//

1       DATED this 13th day of August 2018.

John C. Coughenour
UNITED STATES DISTRICT JUDGE